THE PHŒNIX WAREHOUSING COMPANY, RESPONDENT,
v. DANIEL D. BADGER, APPELLANT.

*Corporation — existence of — by whom cannot be denied — subscription to stock of.*

This action was prosecuted by and on behalf of the receiver of an insolvent corporation, to recover the unpaid balance of the subscription to the capital stock thereof, made by the defendant, who had been one of the originators of the enterprise, and, as a trustee of the corporation, had taken an active part in the organization and management of the company. *Held*, that he was estopped from denying the legal existence and validity of the corporation.

The only subscription made by the defendant, was to the certificate of incorporation, by placing opposite to his signature the number of shares taken by him. *Held*, that this was sufficient as a subscription.

Defendant offered to show, that it was agreed between himself and the other projectors of the enterprise, that he was, in fact, to take only a portion of the shares subscribed for by him. *Held*, that the evidence was properly excluded as incompetent, and in contradiction of his subscription.

Subsequently an arrangement was made, with the approval of the company, by which the defendant agreed to transfer to one E. certain of his shares, upon the delivery to the company of E.'s notes, indorsed by the defendant, for unpaid subscription thereon. In accordance therewith, defendant delivered to the company ten of E.'s notes, indorsed by himself, with directions to transfer the stock to E. upon their payment. These notes were renewed several times by new ones, also indorsed by the defendant. Afterwards, the company, without the defendant's knowledge or consent, accepted a new note from E., indorsed by a third person. *Held*, that defendant was a surety for E., and that the company, by taking a new note, and extending the time of payment, without his consent, assumed such note; and that defendant was entitled to be credited with the amount thereof in a statement of his account with the company.

The appointment of a receiver after the commencement of a suit, does not cause the suit to abate, but it may be continued by the receiver in the name of the original plaintiff.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

*John Winslow*, for the appellant.

*F. E. Dana*, for the respondent.

TALCOTT, J.:

This action is brought to recover of the defendant the unpaid balance of his subscription to the capital stock of the company. The corporation was attempted to be created under the general law of 1848, authorizing the formation of corporations for manufacturing, mining, mechanical and chemical purposes. The certificate, under and by virtue of which, the defendant and others undertook to create the corporation, was filed in September, 1863. The purposes specified in the certificate were stated as follows: "For the purpose of building tanks of iron or other material, and storing and keeping for hire, oil of various kinds, and for doing all such other business as may be pertinent to or connected with the storage of oil, petroleum, or other articles, for compensation." The defendant, by way of defense, insists that the act of 1848 did not authorize the creation of a corporation for the purposes expressed in the certificate, and that, therefore, his subscription was void. But it appears that the defendant was not only one of the originators of the enterprise, but one of the trustees, and took an active part in the organization and management of the company, aiding in holding it out to the public as a lawfully organized corporation; that the company is insolvent, and that this suit, though commenced by the corporation, is in fact prosecuted by and in behalf of a receiver, and for the benefit of creditors. Under such circumstances the defendant is estopped from denying the legal existence and validity of the corporation, and the *de facto* existence of the corporation is sufficient. (*Buffalo and Alleghany Valley R. R. Co.* v. *Cary*, 26 N. Y., 75; *Dorris* v. *French*, 11 S. C. N. Y. [4 Hun], 292; 29 Barb., 305; 41 id., 151; 11 N. Y., 103; 57 id., 331.)

The only subscription made by the defendant, was to the certificate whereby the corporation was created, by placing opposite to his signature the number (250) of shares taken by him, and the defendant now claims that the execution of the certificate by him was not sufficient as a subscription, and did not bind him to take the stock thus subscribed for. We consider the law to be otherwise, and that the subscription in question was binding on the defendant and enured to the benefit of the corporation. (*Buff. and N. Y. City R. R. Co.* v. *Dudley*, 14 N. Y., 336; *Lake Ontario, etc., R. R. Co.* v. *Mason*, 16 id., 451; and note *Dayton* v. *Borst*,

31 id., 435.) Fifty shares of the 250 subscribed for by the defendant were paid for by him, and by his direction transferred to an iron manufacturing company, of which he was the president, and he insists that at the time of the subscription it was agreed between himself and the other projectors of the enterprise, that he was in fact only to take fifty shares of the stock. If this was so, being inconsistent with, and in contradiction of, his subscription he could not be permitted to set it up. (*Conn.*, *etc.*, *R. R. Co.* v. *Bailey*, 24 Vt., 465 ; *Piscataqua Ferry Co.* v. *Jones*, 39 N. H., 491.) The evidence tends to show that the defendant was encouraged to believe, that some of the other parties would take the excess over fifty shares off the hands of the defendant, immediately on the organization of the company, and that he subscribed for the 250 shares, relying upon such representations. If any of the other parties made any binding engagements with the defendant to purchase of him the excess over fifty shares, his remedy is against the individual party or parties who made such agreement. The corporation was not at the time in existence, and as against its creditors, at all events, he cannot be permitted to contradict the tenor and legal effect of his contract. After the organization of the company, the defendant made an arrangement with Mr. John Edgerton, with the consent of the company, whereby Edgerton agreed to take off the hands of the defendant the 200 shares, by giving his notes to be indorsed by the defendant, for the amounts of the calls upon the stock as they should respectively be made. And the defendant claims, that there was an agreement on the part of the company, to substitute the liability of Edgerton for that of the defendant, so far as the 200 shares were concerned. The referee has found that this agreement is not proved, and, upon an examination of the evidence, it does not appear, that the company ever agreed to release the liability of the defendant, but, on the contrary, that after the arrangement with Edgerton, the defendant assumed to control the stock. Edgerton gave three notes in July, 1864, indorsed by the defendant, for $2,500 each, and the defendant thereupon gave an order to the company, that *on the payment of those notes* an equal amount of stock should be transferred to Edgerton. The three notes were paid and $7,500 of the stock was transferred to Edgerton, in pursuance of the order of the defendant. In October, 1864,

Edgerton gave three other notes indorsed by the defendant, one for about $1,500, which was given for the interest which had accrued on the unpaid subscription of the defendant, and two others, due in January and February, applicable to the purchase of the stock, and to meet the amount of calls which would be due at the maturity of the notes. With these last notes the defendant gave an order on the company, that on the payment of the three notes, fifty more shares of the stock should be transferred to Edgerton, and also an order on the company to pay Edgerton the dividend on the whole 200 shares. The $1,500 note, given for the interest, was paid, but the larger notes were renewed several times with the indorsement of the defendant, until finally one of the notes, so renewed, was given up to Edgerton, and a new note, for an extended time, and not indorsed by the defendant, but by another party, was received by the company as a substitute for the note so surrendered to Edgerton. The case does not show that this surrender of the note and the substitution of a new note for an extended time, and with another indorser, was with the knowledge or consent of the defendant. As to the renewals indorsed by the defendant himself, his consent to the extension, is presumed from the indorsement by him of the renewal note, but no such presumption can be indulged with regard to the substitution of the note not indorsed by the defendant and not brought to his knowledge. The relation of the defendant to the transaction was as surety for Edgerton on the note, and when the company surrendered it, and took another note extending the time of payment and with a different surety, it assumed the note so far as the defendant was concerned. We think the defendant has a right to treat that note as paid as between himself and the company, and the company cannot charge it to him, as it has attempted to do, in its account with the defendant concerning the stock subscription. In the absence of any further explanation, therefore, it would seem that the defendant is entitled to a further credit upon his stock subscription, beyond what he has been allowed by the referee, and upon this ground a new trial ought to be ordered, as there is a difficulty in adjusting the account on the case before us. And it is possible that the new note with Barstow's indorsement, was received with the knowledge and consent of the

defendant, and under such circumstances, that, in consequence of its non-payment, the defendant is not entitled to a credit of the amount. The appointment of a receiver since the commencement of the suit, does not operate to abate the suit, but it may be continued in the name of the original plaintiff. (Code, § 121; *Albany, etc., Ins. Co.* v. *Van Vranken*, 42 How. Pr., 281; *Tracy* v. *First Nat. Bk. of Selma*, 37 N. Y., 523.)

New trial is ordered, costs to abide the event.

Present — BARNARD, P. J., TAPPEN and TALCOTT, JJ.

Judgment reversed, and new trial granted at Circuit, costs to abide event.